IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MONEYMAX CAR TITLE AND PAYDAY LOAN SERVICES, INC., AND MAXWELL HARRAH | § § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | CIVIL ACTION NO. 6:11-CV-00055 |
| WELLSHIRE FINANCIAL SERVICES, LLC D/B/A "MONEYMAX TITLE LOANS" AND WELLSHIRE FINANCIAL SERVICES, LLC, | § § § § § | |
| DEFENDANTS. | § § | |

**DEFENDANT WELLSHIRE FINANCIAL SERVICES, LLC'S
<u>MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL</u>**

1.   Defendant Wellshire Financial Services, LLC d/b/a MoneyMax Title Loans ("WFS") moves to disqualify Kevin C. Loudon and the Law Offices of Kevin C. Loudon from acting as trial counsel for plaintiffs MoneyMax Car Title and Payday Loan Services, Inc. ("MCT") and Maxwell Harrah ("Harrah" and collectively "Plaintiffs").

**II.   THE ISSUE**

2.   The ethical rules prohibit an attorney from acting as both advocate and witness in the same proceeding. Plaintiffs' counsel, Kevin C. Loudon, is the sole witness with knowledge of material facts relating to Plaintiffs' efforts to research and register the "MoneyMax" mark. Should Mr. Loudon be disqualified to act as Plaintiffs' advocate at trial where he is the sole fact witness on material and disputed issues?

### III. SUMMARY

3. Mr. Loudon wishes to wear, at least, dual hats of advocate and fact witness in this case. Specifically, Mr. Loudon was retained by Plaintiffs to obtain a trademark registration for the "MoneyMax" mark. In connection with those services, Mr. Loudon purported to perform research to ascertain whether others used or had rights in and to the "MoneyMax" mark. Mr. Loudon's research in this regard is at the center of this dispute and Plaintiffs have already tendered testimony from Mr. Loudon in this case. Thus, Mr. Loudon is already a material fact witness.

4. Based on his sworn, written testimony, Mr. Loudon may also attempt to provide purported expert and opinion testimony regarding the alleged rights of Plaintiffs in and to the "MoneyMax" mark under both the common law and pursuant to Texas statute. The law is clear – these dual roles are expressly prohibited under the applicable ethical rules. Despite such black-letter rules, Mr. Loudon refuses to withdraw from this case as trial counsel.

### IV. SUPPORTING EVIDENCE

5. In support of this motion, WFS submits the following evidence contained in the Appendix filed contemporaneously with this motion and incorporated herein as if set forth in full:

(a) Affidavit of The Law Offices of Kevin C. Loudon (the "Loudon Affidavit"), a true and correct copy of which is attached as Exhibit 1;[1] and

(b) Affidavit of Maxwell Harrah and MoneyMax Car Title and Payday Loan Services, Inc. (the "Harrah Affidavit"), a true and correct copy of which is attached as Exhibit

---

[1] Attached as Exhibit 1 is the Loudon Affidavit as-filed [see ECF No. 6-11] by Plaintiffs together with an unsigned complete version of the Loudon Affidavit as provided by Mr. Loudon via e-mail.

2;

(c) Affidavit of Custodian of Records of LegalZoon.com, Inc. (the "LegalZoom Affidavit" and collectively with the Loudon Affidavit and Harrah Affidavit, the "Affidavits"[2]), a true and correct copy of which is attached as Exhibit 3.

## V.   BACKGROUND

6. On May 8, 2009, WFS filed Assumed Name Certificates with the Office of the Texas Secretary of State (the "TSOS") for the use of the marks "MoneyMax Title Loans" and "MoneyMax" in all Texas counties.

7. At least as early as June 30, 2009, WFS began doing business under the "MoneyMax Title Loans" and "MoneyMax" marks in Texas.

8. On or about July 1, 2009, Harrah filed with the TSOS a Certificate of Formation For-Profit Corporation for MCT.

9. No earlier than September 25, 2009, MCT began doing business in Texas using the "MoneyMax" mark.

10. On or about July 5, 2011, Mr. Loudon submitted an Application for Registration of Trademark or Service Mark (the "Application") with the TSOS on MCT's behalf. In the Application, Plaintiffs claimed to be the owner of the "MoneyMax" mark and, "to the best of applicant's knowledge, no other person is entitled to use the mark in this state in the identical form used by the applicant, or in a form that is likely, when used in connection with the goods or services, to cause confusion or mistake, or to deceive, because of its resemblance to the mark used by the applicant."

---

[2] The Affidavits attached hereto were submitted by Plaintiff in connection with the Preliminary Injunction Motion (defined below). *See* ECF No. 6.

11. About that same time, the TSOS issued to MCT a Certificate of Trademark or Service Mark Registration of MoneyMax.

12. On or about September 21, 2011, Plaintiffs filed Plaintiffs' Original Petition and Plaintiffs' Original Petition for Declaratory and Injunctive Relief (the "Petition") in Case No. 11-9-72223-C styled *MoneyMax Car Title and Payday Loan Services, LLC, et al v. Wellshire Financial Services, LLC d/b/a MoneyMax Title Loans* (the "State Court Action") in the 267th Judicial District Court of Victoria County, Texas (the "State Court").

13. In the Petition, Plaintiffs demand a jury trial.

14. On September 22, 2011, Plaintiffs obtained an ex parte temporary restraining order (the "*Ex Parte* Order") prohibiting WFS from "Using and/or displaying in any manner the name 'MoneyMax' (or similar or substantially similar name) in connection with offering car title and/or payday loans in" (a) "Victoria County (and its towns/cities), DeWitt County (and its towns/cities), Goliad County (and its towns/cities), Calhoun County (and its towns/cities), and Refugio County (and its towns/cities)"; and (b) "all areas in the State of Texas where Defendants have not operated as a car title and/or payday loan business with the use of (at least in part) the name 'MoneyMax' (or similar or substantially similar name) prior to July 5, 2011."

15. Plaintiffs served a copy of the Petition and *Ex Parte* Order via certified mail post-dated September 23, 2011 and received by WFS's registered agent on September 27, 2011.

16. On October 3, 2011, WFS removed the State Court Action to this Court based on federal question and diversity jurisdiction.

17. On October 6, 2011, Plaintiffs filed Plaintiffs' Request for Preliminary Injunction (the "Preliminary Injunction Motion") in this Court.

18. While Plaintiffs submitted the Affidavits in support of the Preliminary Injunction

Motion, what is facially apparent from the Harrah Affidavit is that Harrah has little, if any, personal knowledge of any facts relevant to the Preliminary Injunction Motion. Conversely, it is clear from the Loudon Affidavit that Mr. Loudon is a key fact witness in this case.

19. For example, according to the Loudon Affidavit,

> [Loudon] was initially contacted by MoneyMax® Car Title and Payday Loan Services, Inc. in the last weeks of June 2011 to [sic] for the purposes of being retained to obtain a trademark registration for MoneyMax® Car Title and Payday Loan Services, Inc. Pursuant to that, [Loudon] performed a search to ascertain whether the desired mark of MoneyMax® was available to be registered as a trade mark with the Texas Secretary of State.
>
> This search consisted of researching the Federally Held Trademarks listed with the United States Patent Office, the State Held Trademarks listed with the Texas Secretary of State, and a generalized internet search on Goodle consisting of the typed in inquiry "registered and trademark and moneymax."
>
> The examination of the Federally Held Trademarks indicated that no other entity doing business in the same industry as MoneyMax® Car Title and Payday Loan Services, Inc. (in the same geographic area as MoneyMax® Car Title and Payday Loan Services, Inc. and/or in Texas) held a registered trademark to MoneyMax® (or anything substantially similar).
>
> \*   \*   \*
>
> Again, the examination of the Texas Secretary of State held trademark (active or expired) revealed no entity was using the mark of MoneyMax® Car Title and Payday Loan Services, Inc. in Texas in identical form, or in a form that was likely to cause confusion, or mistake in the general public(and/or to deceive the general public) when used in connection with goods and/or services because of its resemblance to that of MoneyMax® Car Title and Payday Loan Services, Inc.

Loudon Affidavit, ¶¶ 5-7, 9.

20. Only after registering the "MoneyMax" mark, Mr. Loudon

> … again performed a search on Google consisting this time of only the query term of moneymax. After scanning through several pages it was learned there was some entity known as Money Max Title Loans doing business in the industry of car title and payday loans as an affiliate of Wellshire Financial Services, L.L.C.
>
> [Loudin] next searched the Texas Secretary of State's Credit Services Organization website files and learned that Wellshire Financial Services, L.L.C. was listed with them as Wellshire Financial Services d/b/a Money Max Title Loans and LoanStar Title Loans.

> \* \* \*
>
> From the above exercise it was determined that only seven (7) of these listed/registered locations could be verified as actually being a Money Max Title Loan and that these were only doing business in Houston, Amarillo, and Dallas. One hundred and fifty (151) one of these locations were verified in this manner as being a LoanStar Title Loan business.

Loudon Affidavit, ¶¶ 13-14, 18.

21.     Conspicuously absent from the Loudon Affidavit is any indication that, prior to his registration of the "MoneyMax" mark, Mr. Loudon attempted to determine or researched any unregistered, common law uses of, or rights in, the "MoneyMax" mark – including WFS's use that admittedly preceded Plaintiffs' use.  Nor are any of the referenced pre-registration records upon which Mr. Loudon supposedly relied attached to the Loudon Affidavit.  Upon information and belief, Mr. Loudon failed to retain a copy or, in the alternative, destroyed those records.

## VI.     ARGUMENT

*"Testifying about facts is the function of the witness, not of the lawyer."*[3]

### A.     The advocate-witness role is expressly prohibited by the disciplinary rules.

22.     It is axiomatic that problems arise when a lawyer attempts to play the role of both advocate and witness.  As a consequence, pursuant to the Texas Disciplinary Rules of Professional Conduct (the "Texas Rules"),[4] which govern here,[5] courts do not permit a lawyer to serve as both an advocate and witness in a singular proceeding.[6]

---

[3] *Kalina v. Fletcher*, 522 U.S. 118, 131, 1118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (emphasis added).
[4] TEX. DISCIPLINARY R. PROF'L. CONDUCT, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp. 2010) (TEX. STATE BAR R. art. X, § 9).
[5] *See* Local Rules of the United States District Court for the Southern District of Texas, Appendix, Rule 1 ("Lawyers who practice before this court are required to as mature and responsible professionals, and the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct.")
[6] *See, e.g., Crossroads Sys. (Tex.) Inc. v. Dot Hill Sys. Corp*, 2006 WL 1544621, 82 U.S.P.Q.2d 1517 (W.D.Tex. May 31, 2006) (NO. A-03-CA-754-SS); *Anderson Producing Inc. v. Koch Oil Company*, 929 S.W.2d 416 (Tex.

23. Texas Rule 3.8 provides in pertinent part:

(a) A lawyer *shall not accept or continue employment as an advocate* before a tribunal in a contemplated or pending adjudicatory proceeding *if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact* on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issues;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work a substantial hardship on the client.[7]

\*   \*   \*

24. The commentary to Texas Rule 3.08 warns that:

… the principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact. Normally those dual roles are unlikely to create exceptional difficulties when the lawyer's testimony is limited to the areas set out in sub-paragraphs (a)(1)-(4) of this Rule. If, however, the lawyer's testimony concerns a controversial or contested matter, combining the roles of advocate and witness can unfairly prejudice the opposing party. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.[8]

---

1996); *Mauze v. Curry*, 851 S.W.2d 869 (Tex. 1993) ; *In re Bahn*, 16 S.W.3d 865 (Tex.App.-Fort Worth 2000); *Warrilow v. Norrell*, 791 S.W.2d 515 (Tex.App.-Corpus Christi 1989, writ denied).

[7] TEX. DISCIPLINARY R. PROF'L. CONDUCT 3.7(a) (emphasis added); *see also* ABA Model Rule 3.7 which provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness…" barring certain inapplicable exceptions.

[8] TEX. DISCIPLINARY R. PROF'L. CONDUCT 3.7, cmt. 4; *see also* ABA Model Rule 3.7, cmt. 1-3The comments to ABA Model Rule 3.7 provide in pertinent part:

Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and the client.

The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the

25. Thus, while there are many rationales for advocate-witness rule (*e.g.*, the avoidance of jury confusion and protection of both the advocate-witness's client's and the opposing party's interests), the "various ethical cannons speak with one voice with respect to the general question of whether any attorney who will be called to testify in a trial may serve as trial counsel"[9] and the answer is a resounding "no".

### B.   Mr. Loudon is an advocate-witness and must be disqualified as trial counsel.

26. Here, Mr. Loudon's testimony as a witness mandates that he be disqualified as counsel as it is unquestionable that Mr. Loudon's is a witness on material fact issues relating to Plaintiffs' efforts to research and register the "MoneyMax" mark. Why else would Plaintiffs submit the six (6) page, twenty-nine (29) paragraph Loudon Affidavit detailing his efforts to research and register the "MoneyMax" mark.

27. As a result, Mr. Loudon will provide testimony – either in support of his client or adverse to his client – on, at least, the following material facts and issues:

- Efforts to obtain a trademark registration for the "MoneyMax" mark;

- Searches of United States Patent Office records to determine uses of the "MoneyMax" mark;

- Searches of Texas Secretary of State records to determine uses of the "MoneyMax" mark;

- Internet searches to determine common law and registered uses of the

---

combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

To protect the tribunal, paragraph (1) prohibits a lawyer from simultaneously serving as advocate and necessary witness except in those circumstances specified in paragraphs (a)(1) through (a)(3)….

ABA Model Rule 3.7, cmt. 1-3.

[9] *Crossroads*, 2006 WL 1544621, 82 U.S.P.Q.2d at 1525.

"MoneyMax" mark;

- Searches of WFS's uses of the "MoneyMax" mark;

- The retention and/or destruction of records relating to the foregoing searches;

- Communications with the Texas Secretary of State and any other person relating to common law and registered uses of the "MoneyMax" mark.

Significantly, it is clear from the Harrah Affidavit and LegalZoom Affidavit is that neither Harrah nor LegalZoom have any personal knowledge of, and are not competent witnesses about, these facts. Rather, Plaintiffs relied on Mr. Loudon, Plaintiffs' agent, to research and register the "MoneyMax" mark. Thus, Mr. Loudon's testimony is crucial to establish what Plaintiffs knew or should have known about common law uses of the "MoneyMax" mark, and this information is known only to their agent, Mr. Loudon. As such, WFS intends to call Mr. Loudon as a witness at trial.

28.     Further, based on the Loudon Affidavit, WFS anticipates that Mr. Loudon will also attempt to offer opinion testimony about, at least, whether Mr. Loudon's research efforts were commercially reasonable, customary or otherwise legally competent to identify common law usage of the "MoneyMax" mark.[10] For example, it appears that Mr. Loudon's testimony will be used to establish an "advice of counsel" defense to support his clients' claims of good faith registration of the "MoneyMax" mark. Such a defense necessarily waives the attorney-client privilege and places the competency of the attorney at issue. Since WFS disputes that Mr. Loudon's research efforts were commercially reasonable, customary or otherwise legally competent to identify common law usage of the "MoneyMax" mark and MCT's purported

---

[10] *See, e.g.,* Loudon Affidavit, ¶ 27 (referencing commentary to assumed name certificate filings that purportedly limit WFS's common law right in and to the "MoneyMax" mark); Preliminary Injunction Motion, ¶ 13 (citing to Loudon Affidavit as support for MCT's ownership of a "valid, subsisting, uncanceled and unrevoked" registered trademark).

**DEFENDANT WELLSHIRE FINANCIAL SERVICES, LLC'S**
**MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**                                                                 Page 9

registered rights in the "MoneyMax" mark, these matters are undeniably controversial and contested, and the jury (requested by Plaintiffs) will likely be confused or misled by Mr. Loudon's dual role here.

29. In light of Mr. Loudon's past and (expected) future testimony, the ethical rules require his disqualification as trial counsel.[11]  Absent disqualification, Mr. Loudon's dual roles will likely create confusion for the fact finder (*i.e.*, the jury requested by Plaintiffs).[12]  And, given the controversial and contested matters on which Mr. Loudon is expected to testify, combining the roles of advocate and witness can unfairly prejudice WFS.[13]

30. Conversely, the "substantial hardship" exception to the rule mandating disqualification does not apply here.  First, the loss of Mr. Loudon as trial counsel is lessened by the fact that this case is in its infancy.  There is no trial date, discovery deadline or even a scheduling order in place at this time.  As a result, there is more than an adequate opportunity for Plaintiffs to obtain new trial counsel.  Second, this is a trademark case.  Should Mr. Loudon be disqualified as trial counsel, there is no "substantial hardship" as there is no indication that Mr. Loudon has any particular expertise in trademark law that is of any distinctive value to Plaintiffs.[14]  Rather, according to the information Mr. Loudon ostensibly provided to the State Bar of Texas, his practice areas include only "Consumer, Health Care, Insurance, Labor-Employment, Litigation: Personal Injury, [and] Wills-Trusts-Probate".[15]  Third, Mr. Loudon

---

[11] *See, e.g., Warrilow*, 791 S.W.2d at 521-523 (disqualification of trial counsel who acts as expert appropriate); *Mauze,* 851 S.W.2d at 870 (Tex. 1993) (holding that trial court's failure to disqualify plaintiffs' counsel who had submitted a controverting affidavit containing expert opinion testimony constitutes error)..
[12] *See* TEX. DISCIPLINARY R. PROF'L. CONDUCT 3.7, cmt. 4.
[13] *See id.*
[14] *See Warrilow*, 791 S.W.2d at 520.
[15] Attached as Exhibit 4 is a true and correct copy of Mr. Loudon's profile located on the State Bar of Texas website: http://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=285877.

never notified WFS that he expects to testify and that disqualification would work any, much less substantial, hardship on Plaintiffs.[16] And any such notice in the future would be untimely.[17]

## VII. PRAYER

For the foregoing reasons, WFS respectfully requests the Court grant this motion, enter an order disqualifying Mr. Loudon to act as Plaintiffs' trial counsel in this proceeding, and grant such further relief to which WFS may be entitled at law or in equity.

Respectfully submitted,

By: /s/ *Thomas C. Wright*
**Thomas C. Wright** *(attorney-in-charge)*
Texas Bar No. 24028146
SDT Bar No. 37673
twright@gardere.com
**Steven C. Lockhart**
Texas Bar No. 24036981
SDT Bar No. 435584
slockhart@gardere.com

**GARDERE WYNNE SEWELL LLP**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 999-4707 - Telephone
(214) 999-3707 – Facsimile

**ATTORNEYS FOR WELLSHIRE FINANCIAL SERVICES, LLC.**

---

[16] *See* TEX. DISCIPLINARY R. PROF'L. CONDUCT 3.08(a)(5).
[17] *See Bahn*, 13 S.W.3d at 874.

## CERTIFICATE OF CONFERENCE

This certifies that on October 7, 2011, Steven C. Lockhart, *Esq.*, counsel for WFS, conferred with Kevin Loudon, *Esq.*, counsel for Plaintiffs regarding the specific substance and subject-matter of this motion. Despite these efforts counsel cannot agree on the disposition of this motion

/s/ *Steven C. Lockhart* _____
Steven C. Lockhart

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served, as indicated below, on all counsel of record on this the 10th day of October, 2011.

*Via Federal Express and E-mail: kevin_loudon@yahoo.com*

Kevin C. Loudon, *Esq.*
2743 State Highway 6 South
Quanah, Texas 79252

/s/ *Thomas C. Wright*_____
Thomas C. Wright